PETER J. SCHLIEF v. JOHN W. HART.

Extrinsic testimony is admissible to identify land conveyed by the following: description, to wit: "A tract or lot of land known as the east half of the southwest division of section 17," although such testimony shows that the land so.conveyed is less in quantity than the mathematical half of the division.

MOTION for leave to file a petition in error to the District. Court of Lorain county.

The original action was brought in the Court of Common Pleas of Lorain county, by the defendant in error against the plaintiff in error, to recover the possession of a strip of land. The real controversy related to the location of a division line. The parties were severally the owners of adjacent parcels of land situate in a subdivision of section 17, in Carlisle township, in said county, designated and known as the southwest division of said section. This section, as well as section 14 on the north and section 24 on the south of it, had been subdivided into six parts, known as the southwest, west-middle, northwest, northeast, east-middle, and southeast divisions, by a north and south line through the center, and two east and west lines equidistant from each other and from the north and the south lines of the section.

Previous to July 18, 1862, one Albert Ely, who is the common source of title, owned the whole of the southwest division of this section, and on that day conveyed to one Thomas Graham, under whom the plaintiff below derived title, a parcel of land by the following description, to wit: "The following described tract or lot of land situated in the township of Carlisle, in the county of Lorain and State of Ohio, and is known as the east half of the southwest division of section 17, containing fifty-four acres and eighty-four hundredths of an acre of land, be the same more or less, subject to all legal highways. . . . Said

Ely reserving to himself, his heirs and assigns forever, the right of occupying for a public highway a strip of land two rods in breadth, to be taken from the west side of the below (above) described land."

On the 29th of June, 1864, Ely conveyed to one James Caughlin "the following described tract or lot of land, situate in the township of Carlisle, in the county of Lorain, and State of Ohio, and is known as the west half of the southwest division of section seventeen, said Ely reserving to himself and his heirs the right of occupying for a public highway a strip of land two rods in width, to be taken from the east side of the above described land the entire length, . . . and containing fifty-four acres and eight hundred and forty-five thousandths of an acre of land, be the same more or less."

The defendant below claimed title under Caughlin, and is the owner of the north half of the tract last above described.

The strip of land in controversy lies east of a line drawn north and south through the southwest division of this section, so as to divide it (the southwest division) into mathematical halves.

On the trial of the cause in the court of common pleas, the defendant offered to prove that in the year 1836, Heman Ely, the ancestor of Albert Ely, who was at that time the sole owner of sections 14, 17, and 24, in this township, caused a line to be surveyed from the north line of section 14 to the south line of section 24, a distance of three miles, near the center of the several northwest, west-middle, and southwest divisions, but a few rods east of center, and caused said line to be distinctly marked on trees and by other monuments, many of which are still plainly visible; that in 1846 the commissioners of Lorain county duly located and established a public highway, the center of which was the line surveyed and marked by Heman Ely, from the south line of section 24 to the Butternut Ridge road, on the north line of section 14; that this road has been duly opened through section 24 to the south line of the south-

west division of section 17, and from the north line of said section 17 to the north line of section 14, but that said road was not opened through any part of section 17; and he also offered to give in evidence divers other facts and circumstances tending to prove that the part of the division lying east of said marked line was generally known as the east half of said division, and the part west of the same line as the west half, and especially that such parcels were known as such east and west halves by plaintiff and those under whom he holds title, as far back as said Heman Ely, who died in 1852; and also tending to prove that the terms of description used in said deed of conveyance from Albert Ely to Thomas Graham, the plaintiff's grantor, were intended by the parties to describe the portion of said division east of said marked line and located road, and not the east mathematical half of said division; all of which was well known to the plaintiff.

All the testimony so offered by the defendant, on the objection of the plaintiff, was excluded by the court; and thereupon the court instructed the jury that the above mentioned deed from Albert Ely to Thomas Graham, as well as the deed from Graham to the plaintiff, conveyed the east half of said division; that the subsequent deed from Ely to Caughlin conveyed the west half; that the half conveyed to each was the mathematical half in quantity; and that the plaintiff was entitled to recover so much of such east half as laid west of said marked line.

To the exclusion of each and every part of the testimony offered, and to the charge as above stated, the defendant below excepted.

Verdict and judgment were rendered for the plaintiff below, which judgment was afterward, on petition in error, affirmed by the district court.

*N. L. Johnson*, for the motion, claimed that the term "half," as employed by mankind in their dealings, does not of necessity imply "the mathematical half in quantity," and that the evidence offered by the plaintiff in error as to

what was intended by the descriptions in the deeds was admissible, even if it tended to show that the land conveyed was less than the mathematical half. 13 Peters, 89 ; *Hildebrand* v. *Fogle*, 20 Ohio, 147 ; 1 Greenl. on Ev., sec. 286; *Shaw* v. *Wilson*, 5 Scott (N. K.) 1037 ; Cruise on Real Property, title 32, chap. 20, sec. 6.

*John C. Hale*, contra, claimed : That the mathematical half of the land was called for by the deeds ; that there was no ambiguity in the description as contained in the deed ; it was plain, and needed no parol evidence to aid in its construction. No such evidence was competent. Deeds must interpret themselves without reference to the acts of the parties. Tyler on Boundaries, pages 124, 161, 195, 284; *Dodge* v. *Nichols et al.*, 5 Allen, 548; *Bond* v. *Fay*, 12 Allen, 86.

The description in a deed can not be controlled by the declarations of the parties, or by proof of negotiations or agreements on which the deed was executed, 22 How., 1–18.

The intentions of the parties to a deed can not be made to take the place of a controlling call in a deed, or to contradict the description in the deed. *McOffity* v. *Conover*, 7 Ohio St. 99 ; *Barton* v. *Heirs of Morris*, 15 Ohio, 408 ; *Brown* v. *Allen*, 43 Me. 590 ; *McCoy* v. *Gallaway*, 3 Ohio, 280; *Maddon* v. *Tucker*, 46 Me. 367–376 ; *Baldwin* v. *Brown*, 16 N. Y. 359 ; *Childs* v. *Wells*, 13 Pick. 121–123 ; 46 N. Y. 204 ; 44 Me. 215.

The intention plainly appears from the call for center line and the equal quantities of land.

McILVAINE, J. There is no doubt, that the deed from Albert Ely to Thomas Graham, under which the plaintiff derived title, should, upon its face, be construed as a conveyance of the east half of the southwest division of section 17, to be ascertained by strict measurement. But, in our judgment, the terms of the description in the deed are such as may be applied to a parcel of land either greater or less in quantity than the exact half of the division. Ex-

trinsic evidence, whereby the land described is identified, whether it be more or less than the mathematical half, does not contradict, vary, or explain the terms in the deed, but leaves every word in the description to be understood in its plain and ordinary sense.

It is not true, as asserted by counsel for defendant in error, that the description in the deed calls for a fixed boundary and monuments, or for a certain quantity of land. The description is of a tract of land, " known as the east half," and " containing fifty-four acres and eighty-four hundredths of an acre of land, be the same more or less."

It is contended, however, that the words " known as " contained in the description of the land conveyed, are of no significance, or, that they should be understood in the sense of " being." We find no warrant in the context for rejecting these words, nor do we know any reason why they should not be understood in their plain and ordinary meaning.

Some stress appears, also, to be placed on the fact, that the division line contended for by the defendant below was not run or indicated by the original survey of the section, nor by any survey made in pursuance of a public law, but was arbitrarily located and marked by Heman Ely, then the proprietor of the section. The difference between the effect of a public and a private survey intended to subdivide a tract of land into halves, would, in this respect, as we understand it, be this : That in subsequent conveyances of the halves, the parties would be presumed to have adopted the line of the former survey ; while it must be shown, as matter of fact, that they intended to adopt the latter ; and as to the latter, their intention to so adopt it can be shown by extrinsic testimony only, when it can be done without contradicting the terms of the deed.

We need not now determine whether each and every item of the rejected testimony was competent. The question before us is, Was parol testimony of extrinsic facts and circumstances admissible to show that the tract of land " known as the east half" was in fact less than the mathe-

matical half of the division? This question we answer in the affirmative; and as some of the rejected testimony was competent, it was error to reject such part. The exception taken by the defendant below was to the ruling out of each and every part of the testimony so offered.

*Judgment reversed and cause remanded.*