BALDWIN *v.* BALDWIN.

1. LANDLORD AND TENANT — RECORDING LEASE — POSSESSION AS NOTICE OF TENANT'S RIGHT.

A purchaser of land knowing that a building stood on it claimed by a tenant in possession, was put on inquiry to ascertain the tenant's rights, and took subject to a five-year written lease of the premises under which the tenant had possession, although the instrument was not recorded as required by statute. 3 Comp. Laws, §§ 8988, 8994. OSTRANDER, C. J., dissenting.

2. ESTOPPEL—LANDLORD AND TENANT—REAL PROPERTY—SUMMARY PROCEEDINGS.

In summary proceedings for the possession of real property, defendant is not estopped to claim rights under a lease of the premises because, in a prior proceeding against him, brought by the same complainants, he claimed possession under an earlier agreement for a shorter term, and complainants dismissed the cause and recommenced the action after such prior agreement had terminated.

Error to Ingham; Collingwood, J. Submitted February 7, 1911. (Docket No. 135.) Decided June 2, 1911.

Summary proceedings for the possession of real property by William H. Baldwin and Maude Baldwin against Frank J. Baldwin. From a judgment in favor of complainants in commissioner's court, defendant appealed to the circuit court, where the judgment was affirmed. Defendant brings error. Reversed.

*Raudabaugh & Person (Fred J. Slayton, of counsel), for appellant.*

*Lawton T. Hemans, for appellees.*

BIRD, J. Complainants brought summary proceedings before a circuit court commissioner to obtain possession of a village lot in Onondaga. They prevailed in the com-

missioner's court and again on appeal in the circuit court. From a judgment of the circuit court, the defendant has assigned error.

Grove Baldwin, the grandfather of the parties to this suit, was the owner of the village lot in question. He and the defendant were the owners in common of a small building situate thereon, which had been used for several years for commercial purposes. For some time prior to August, 1903, Grove Baldwin and the defendant had been conducting a meat market in the building. In August of that year they closed out the business and entered into a written agreement with reference to the lot as follows:

"ONONDAGA, MICH., August 8, 1903.
"Grove Baldwin and I quit market this day. We divide meat and cash equally, one-half each and here is what we agree: Frank Baldwin is to pay five dollars ($5.00) per year for rent of lot that market building is on, and Grove Baldwin is to pay the taxes. Lot is described same as building. Received of Frank Baldwin five dollars ($5.00) for rent of lot from August 8, 1903, to August 8, 1904.
                    [Signed]      "GROVE BALDWIN.
"Grandpa signs name to contract and receipt.
                    [Signed]      "FRANK BALDWIN."

The defendant kept possession of the premises until 1907, when they were leased to the telephone company for one year with the privilege of five years. At the time of making this lease, the following agreement was made between Grove Baldwin and the defendant:

"ONONDAGA, MICH., June 17, 1907.
"We rent our market building to the Onondaga Telephone Exchange Company today for one to five years and I give Frank this to show that he is to have the use of the lot our market building is on for five years from date, and he is to pay same as old contract five dollars ($5.00) per year.
                    "GROVE BALDWIN.
"I agreed to pay five dollars ($5.00) per year for the five years.
                    "F. J. BALDWIN."

Later, and on December 28th, 1907, the following paper was executed by Grove Baldwin and delivered to the defendant:

"ONONDAGA, MICH., December 28, 1907.

"Frank pays for the paint and the hardware also for painting building and expenses all come to $4.33.   He pays out of his own money and I am to pay one-half which is one-half of $4.33, $2.16.   Frank has receipts for hardware but not from Van Riper $1.50.   I pay my one-half by giving Frank credit on his rent for $2.16 to apply on and after August 8, 1908, for rent of lot that our market building is on; balance due on year's rent $2.84.

"GROVE BALDWIN."

In January, 1908, Grove Baldwin died, and in the settlement of the estate, the village lot fell to C. W. Baldwin of Nebraska, a brother of the parties to this suit. Soon afterward he sold it to the complainants and about that time the defendant purchased from the Grove Baldwin estate the undivided one-half interest in the building, which made him the sole owner thereof.   The complainants gave the defendant notice on the 18th day of August, 1908, to remove the building from the lot.   Defendant disregarded this notice, and in April, 1909, the complainants commenced a proceeding before the circuit court commissioner to obtain possession of it.   Upon the hearing before the commissioner, the defendant exhibited his receipt under date of December 28, 1907, showing his right of possession until August 8, 1909, whereupon the complainants discontinued the proceedings.   On October 5, 1909, this suit was begun for a like purpose before the commissioner, and a hearing had.   At this hearing the defendant not only offered the receipt which he offered at the first hearing, but also the receipt under date of June 17, 1907, which showed his five-year lease of the premises.   On appeal to the circuit court, the defendant offered the same receipts in evidence.   At the conclusion of the proofs, the trial court directed a verdict for the complainants, basing it upon the following propositions:

*First.* It is the theory of the trial court that the lease under which defendant claims, being a five-year lease, is void because it has not been recorded in the office of the register of deeds, as required by statute.

*Second.* The trial court held that because the defendant introduced his receipt only as showing his right of possession at the time of the first trial, before the commissioner, he is estopped in the case now before the court from claiming possession under any other or further or different agreement, and is, therefore, estopped from claiming any rights under his five-year lease.

The appellant has assigned error upon these propositions: The statute makes unrecorded leases for more than three years void as against subsequent purchasers in good faith. 3 Comp. Laws, §§ 8988 and 8994. This lease was for more than three years and was not recorded, so it becomes important to inquire whether at the time complainants purchased the lot they were good-faith purchasers. Complainant William H. Baldwin's own testimony seems to determine the question. He testified that at the time he purchased the lot he knew the building stood upon it; he also knew that the building was claimed by the defendant and that the defendant was in possession of it. Under these admissions complainants were not good-faith purchasers. Knowing these facts, they are put upon inquiry, and should have ascertained what the rights of the tenant were. Failing in this, they took title to the property, subject to the rights of the defendant. *Russell* v. *Sweezey,* 22 Mich. 235; *Dickinson* v. *Wright,* 56 Mich. 42 (22 N. W. 312); *Stevens* v. *Castel,* 63 Mich. 111 (29 N. W. 828); *Holmes* v. *Deppert,* 122 Mich. 275 (80 N. W. 1094); *Howatt* v. *Green,* 139 Mich. 289 (102 N. W. 734).

Complaint is made that the trial court held that the defendant was estopped from introducing the receipt under date of June 17, 1907, showing his five-year lease because he did not introduce it upon the first hearing before the commissioner. This proposition cannot be sustained. The defendant offered his receipt under date of December

28, 1907, showing his right of possession until August 8, 1909. This was sufficient to and did defeat the complainants' action. The defendant was under no legal obligation in that action to show that he had the right of possession beyond that period. The record does not disclose that the complainants made any inquiry of him concerning the extent of his interest in the premises. It might have been in the interest of fairness on defendant's part to have disclosed at that time his entire interest in the premises, but evidently the kind of brotherly love which existed between the brothers prevented defendant from disclosing anything more than the exigencies of the case required.

There are other errors assigned, but we think it will be unnecessary to consider them on account of the conclusion reached.

The judgment of the trial court is reversed and a new trial granted.

BROOKE, BLAIR, and STONE, JJ., concurred with BIRD, J.

OSTRANDER, C. J. (*concurring*). I agree with Mr. Justice BIRD in reversing the judgment, but not in the reasons assigned therefor.

1. It is doubtful if the rule that possession of real estate is notice of the possessor's rights therein, whatever they may be, and the rule that a purchaser is not a good-faith purchaser within the meaning of the statute, as against one in possession of the land, should be applied in this case. The land was occupied by a building owned jointly by the defendant and the owner of the fee. The land was part of the owner's homestead. The fee owner died. His interest in the land passed by the warranty deed of an heir at law to complainants September 8, 1908, pursuant to a contract for its purchase made June 13, 1908. His interest in the building passed, through his administrator, to the defendant July 16, 1908. When complainants contracted to purchase the land, the building was

occupied by the Onondaga Telephone Exchange Company. It paid rent, one-half to the fee owner, and one-half to defendant. Before defendant purchased the building from the administrator, he had notified the telephone exchange company to vacate the building, and it did vacate it in July, 1908, moving to another building erected by the complainants on the same lot. It does not appear that defendant's building was thereafter occupied. Defendant introduced the following memorandum as evidence of the sale of the building to him:

"ONONDAGA, MICH., July 16, 1908.
"Received of Frank J. Baldwin fifty dollars ($50.00) for the estate's one-half interest in the market building located and described in joint bill of sale given to Grove and Frank Baldwin by A. J. Swift, October 1, 1900. I agree to turn over the keys and see that the building is vacated July 31, 1908, or forfeit the money on building and rent.
"HELEN D. BALDWIN, Administrator."

Considering these facts, I am not prepared to hold that complainants as purchasers of the land were put upon inquiry as to defendant's rights in the land on which the building stood. The statute (3 Comp. Laws, § 8988) is:

"Every conveyance of real estate within this State, hereafter made, which shall not be recorded as provided in this chapter, shall be void as against any subsequent purchaser in good faith, and for a valuable consideration, of the same real estate or any portion thereof, whose conveyance shall be first duly recorded."

And the term "conveyance," used in this statute, includes leases for a term exceeding three years. 3 Comp. Laws, § 8994. Undoubtedly, the title of a purchaser of land is affected by the interest of a tenant in possession. But as possession under an unrecorded deed to constitute notice must be open, manifest, unequivocal, and referable to the deed (*Atwood* v. *Bearss*, 47 Mich. 72 [10 N. W. 112]), so the possession of one claiming to be a tenant under a lease which the law requires to be recorded ought to be open, manifest, unequivocal, and referable to the

lease. The occupancy of this land by the building was entirely consistent with the ownership of the fee of the land by one who owned also a half interest in the building. The estate having sold its interest in the building, there would appear to be no reason why the land of the estate should any longer support it, or why the owner of the building should not remove it upon request.

2. But there is testimony, sufficient in my opinion to carry the case to a jury, tending to prove that complainants' grantor and complainants had actual notice or knowledge that defendant had, or claimed, some right, based upon contract, to occupy the land. The notice to move the building, given by complainants' grantor, is a notice to move it in three months from date of notice. The notice contains the following:

" Your lease and all rights to occupy said lots having expired."

This was the last notice given. The complaint made to the circuit court commissioner in the present suit alleges that defendant is tenant of complainants. What was set out in the earlier complaint does not appear. There is testimony tending to prove that upon the first trial before the commissioner defendant stated that he claimed the right by contract to remain on the land and that he would surrender possession in 1912. It appears, further, that complainant William H. Baldwin was secretary of the Onondaga Telephone Exchange Company, which leased the building in June, 1907, from Grove Baldwin and defendant for one year with the privilege of five years. Upon the first trial, judgment was given for defendant and the judgment was not appealed from. No new notice was given to defendant, but this suit was begun after the time to which defendant showed that he had paid rent to the original owner.

3. If, before purchasing the land, complainants had inquired of defendant about his interest in the land, defendant might be bound by the answers he made if they were

acted upon by complainants. Complainants did not inquire. It is urged that defendant is nevertheless estopped to now assert a right or interest in the land other than the one he asserted upon the first trial before the circuit court commissioner. It has been pointed out that upon the last trial testimony was given to the effect that upon the first trial defendant claimed in his testimony the right to occupy the land until 1912. That he gave such testimony upon the first trial is disputed. It is plain, therefore, that whether the estoppel relied upon exists cannot be determined as matter of law. It is quite as plain that the estoppel relied upon does not meet the contention of defendant that complainants purchased the land subject to his leasehold interest therein; a contention which is based upon the state of things existing at and before the time when complainants acquired title to the land.

These several conclusions lead to the further one that the judgment of the circuit court should be reversed and a new trial ordered. We cannot anticipate the course which will be pursued at another trial. Assuming that a record will be made substantially like the one before us, the jury should be permitted to determine whether the complainants (appellees), or either of them, when they purchased the land, had actual notice, or knowledge, that defendant had, or claimed to have, a lease of the land upon which the building stood.